211 P.2d 150

**HILL v. POTLATCH FORESTS, Inc. et al.**

No. 7578.

Supreme Court of Idaho.

Nov. 1, 1949.

Elder, Elder & Smith, Coeur d'Alene, for appellants.

Paul C. Keeton, Lewiston, for respondent.

## GIVENS, Justice.

On or about July 27, 1948, respondent was working for appellant, Potlatch Forests, Inc., as a rigging slinger behind a truck on a skidding job, hooking the winch lines to the choker, which was attached to a log. Considering himself in the clear, he signaled to the 'cat' driver to pull the sling. A limb or sapling struck him, knocked him down and another limb or sapling struck his ankle; causing a fracture of the right ankle involving the medial and lateral malleolus and posterior articulation of the tibia. He was hospitalized, the fracture reduced, his leg placed in a cast and on November 29, 1948, he was released for light work.

December 11 he was offered a job as bull cook at wages less than he received formerly, which he refused because his wife could not be employed at the same camp,

and he wanted her with him to apply hot packs to his ankle.

Respondent filed application for workmen's compensation, which the Board awarded to January 20, 1949. Appellants contend compensation should have been allowed only to November 29, 1948, and that there is no evidence to sustain the findings and conclusions of the Board.

Dr. Douglas, appellants' witness, who had treated respondent, testified at the time of the hearing April 21, 1949, that he had discharged respondent (from medical and surgical treatments, etc.) as ready to resume light employment November 29, 1948:

"Q. Do you think he could have gone back to his regular work at that time? A. No.

"Q. Do you think he could have done work that required him to stand on his feet? A. I thought he could at that time. The job we were talking about was a flunky job. I thought he could do that work,— work of a general nature."

The Doctor then admitted he had made a report in connection with respondent's accident to the Omaha Mutual Benefit Health and Accident Company in which he stated respondent would be able to perform light work January 1, 1949. The Doctor also admitted filling out the Medical Report to the Board on January 20, 1949, which contained these statements:

"Q.—I notice on line 4 of that document it is stated, Will the claimant be able to take up his regular work on said date— A. No.

"Q.—and if not, state how long it will be necessary for him to perform light work? Typed in there is, four months— four months from what date,—January 20th or November 29, 1948?"

The Doctor explained it was four months from January 20, not November 29, 1948. On re-direct, appellants' counsel clearly recognized there was a conflict in the Doctor's testimony and elicited an explanation of a substantial nature:

"A. One of the most difficult things that we have to figure out is trying to estimate at some distant time in the future when they will be able to work. If I don't fill it out, they woof at me, and when I make a wild guess, they are after me, which is a source of aggravation to me.

"Q. I wish you would explain that for the record. A. Presumably, at the time I filled this out I estimated four months from January 20th, I thought he would be able to go to work.

"Q. And at the time of your last examination you feel that he is able? A. I feel that he is able to work now.

"Mr. Houtz: As of what date, Doctor? A. Well, any material change in this man's leg one way or the other would be infinitesimal. He could go to work today as well as next month. I think we would

have to fix a time for Eli to go to work and fix that day for him, probably some time in the near future would be the time I would estimate.

"Mr. Houtz: Would you care to hazard a date on that, Doctor? A. Yes, I would set a date, I would say, as a matter of settling the thing, it would be well to probably return him to work in about a week. That gives him time to clear up what little things he has to do before he goes back to work a week from today.

"Q. (Mr. Elder) Does the extra week have anything to do with the physical condition,—for what reason are you waiting the week, Doctor? A. I have to deal with people. In other words this man has a lot of things he probably would have to get ready to work on. I can't just determine when a patient is able to go back,—he has some rights to his activities. He probably has some personal things to do such as making arrangements to get back to the job, and I think it is only fair to give him a little leeway. The change in the leg would be nothing, it would be the same as it is now.

"Q. On Defendants' Exhibit #7, you show that on November 29, 1948, the claimant was able to resume employment, in other words, light work. On claimant's Exhibit #8, which you have just testified is a report you made to the Mutual Benefit of Omaha, you estimate that he can return to light work on January 1, 1949.

Those two reports are conflicting. Would you care to explain to the Board how that occurred?

"Mr. Keeton: I object to that on the ground the exhibits speak for themselves.

"Mr. Elder: The claimant has introduced this for the purpose of impeachment. I certainly have the right to have the witness testify as to why those two dates conflict.

"Mr. Houtz: Go ahead, Doctor. A. Well, again I am dealing with people. In other words, I am dealing with an injured man who has not an entirely recovered leg and frequently we get people back to work when they are not entirely recovered. I have men working with casts if they care to work. Lots of time they do no injury to halt their injury if they go back while they are not entirely well. Eli felt that he could go back to work if his wife went with him, and in November I called Potlatch and told them if they could find a place where they could put him to work and employ his wife,—but that didn't work out and there was a period of time in there when I didn't know just what was going on. And then come along about the 20th of January and Mr. Hopkins told me over the telephone—he called and informed me that on the 29th of November I had called and told them he could do light work. I had been trying to jockey and get this man on the job which I thought would be the best thing for him. The thing didn't work out and Mr. Hop-

kins held me to my original date. The first time I opened my mouth he wrote it down on a pad."

The Board carefully analyzed the evidence, saw the witnesses, both the Doctor and the respondent, and it is for the Board to resolve the conflicts or inconsistencies in the evidence, which they carefully did, thus concluding: "There could be some justification for accepting the doctor's report to another insurance company as fixing the date of surgical healing as January 1, 1949, but in view of all the facts and circumstances, the Board chooses to accept his routine report of January 20, 1949, made under the Workmen's Compensation Law, as having more weight. In spite of its inconsistent statements as to dates, when supplemented by the doctor's oral testimony, it furnishes the most definite basis for fixing the date of surgical healing, which the Board hereby finds to be January 20, 1949.

"From its experience in other cases of ankle fracture the Board is cognizant that a period of five months' after-care required of a surgeon in such a case is commonly accepted as reasonable. The date of surgical healing herein fixed extends that period by about three weeks, which, considering the fact that nine days after its first reduction the fractured leg was reset, is not unreasonable."

■■ The law is undoubtedly as contended by appellants; that when disability as a matter of fact ceases, the payments of compensation shall cease, but the determination of when disability as a matter of fact ceases, is by the Constitution within the exclusive province of the Board. While reasonable minds might well differ as to conclusions to be drawn from the above testimony or the interpretations to be placed upon it, its solution was for the Board and they were clearly justified in drawing the conclusion they did; i.e., that respondent's disability be declared to have ceased on January 20, 1949, and not on November 29, 1948.

Judgment is, therefore, affirmed. Costs awarded to respondent.

HOLDEN, C. J., PORTER and TAYLOR, JJ., and SUTTON, District Judge, concur.