225 P.2d 469

## CARLSON v. SMALL LEASING CO. et al.

### No. 7617.

Supreme Court of Idaho.

June 26, 1950.

On Rehearing Dec. 14, 1950.

Keane & McCann, Wallace, for appellant.

Walter M. Oros, Boise, Robert E. Brown, Kellogg, amici curiæ.

Ralph S. Nelson, Spencer Nelson, Philip E. Dolan and Whitla & Knudson, all of Coeur d'Alene, Anderson & Thomas, E. B. Smith, all of Boise, for respondents.

PORTER, Justice.

Appellant duly filed with the Industrial Accident Board a claim for compensation for chronic silicosis under the provisions of the Occupational Disease Compensation Law. I.C. § 72-1201 et seq. After a hearing, the board entered an order denying compensation. From such order, appellant has appealed to this court.

Respondent, Small Leasing Company, is engaged in mining operations in Shoshone County. While it has done some underground mining, its principal operation con-

sists in working old mill tailings by the "floatation" process. These old mill tailings were deposited in the flat on both sides of Canyon Creek as waste from the former workings of various mines. These tailings consist of ore and rock which has been crushed and milled. The old mill tailings and other debris are scooped up out of the creek bottom and hauled to the screening plant. They are then run over a vibrating shaker screen to separate the tailings from the debris. This screening is a dry operation, no water being used and generates a large amount of dust.

Appellant is a married man, 54 years of age, without children under 18 years of age. He was born in Norway and has lived here since 1926. He has done a little work in the woods but his occupation has been that of a miner. Appellant was employed by said respondent as operator of the screening plant from August 3, 1943, until September 15, 1948, with the exception that he worked underground during the winter of 1943-1944, and that he laid off work during the summer of 1947 by reason of ill health. During the winter months when the screening operation could not be carried on, he worked as a handyman around the mill and, among other things, did some rough carpentering.

The facts in this case are undisputed and are not in conflict. Respondents introduced no evidence. The board correctly held that "there being no issue of fact, the only disputed questions are of law."

It is within the province of this court to determine whether the board made proper application of the law to the undisputed facts, and, if the board erred, then to set aside its decision. Beaver v. Morrison-Knudsen Co., 55 Idaho 275, 41 P.2d 605, 97 A.L.R. 1399; In re Larson, 48 Idaho 136, 279 P. 1087; In re Hillhouse's Estate, 46 Idaho 730, 271 P. 459.

By specifications of error Nos. I and II, appellant contends that the board erred in ruling that appellant had failed to show hazardous exposure to the inhalation of silica dust subsequent to his underground work and in ruling that there is no substantial showing in the record as to the quantity or quality of silica dust to which he was exposed.

Section 72-1204, I.C., provides:

"Compensation as provided in this chapter shall be payable for disability or death of an employee resulting from the following occupational diseases:

*    *    *    *    *    *

"(11) Silicosis in any occupation involving direct contact with, handling of, or exposure to dust of silicon dioxide ($SiO_2$)."

The testimony of the witness Ringstmeyer was that the dust condition around the shaker screen was "pretty bad," that at a distance the operation "looked like a little whirl-wind" of dust blown up from the screen; that this cloud of dust would be visible down the highway for three-quarters of a mile; that the dust condition

around the screening plant was "too tough for me"; and that the screen operator's clothing and exposed skin would be black with dust.

In its rulings, the board says: "While the Board, following the accepted practice in the mining districts of the state, has deemed a miner's underground employment as a prima facie showing of hazardous exposure, it can not consider in the same category exposure to dust on the surface, without proof of the character of the dust and the concentration of small silica particles."

The mill tailings being processed over the shaker screen were actual underground rock taken out in the old mining operations. This rock had been crushed by milling into even finer particles than when it came from the mines.

Section 72-1215, I.C., reads as follows:

"Whenever used in this chapter, 'silicosis' shall mean the characteristic fibrotic condition of the lungs caused by the inhalation of silicon dioxide (SiO₂) dust."

Doctor Paul M. Ellis, a physician of long experience with silicotics, testified that appellant is suffering with the most severe degree of silicosis, grade 3, and has diminished expansion of the chest as a result of fibrotic changes in the lung itself; and that appellant's silicotic condition is progressing. There is no evidence in the record showing that appellant, during the time of his employment, was exposed to silica dust other than in his work as screen operator for respondent, Small Leasing Company.

The evidence in this case, although circumstantial, is competent, Walker v. Hyde, 43 Idaho 625, 253 P. 1104, and is sufficient to make a prima facie case that appellant was injuriously exposed to the inhalation of silica dust of quantity and quality sufficient to cause the characteristic fibrotic condition of the lungs, caused by the inhalation of silicon dioxide dust. In re Soran, 57 Idaho 483, 67 P.2d 906; Beaver v. Morrison-Knudsen Co., supra.

Appellant, having made a prima facie showing of injurious exposure to silica dust, and such showing being uncontradicted, it was error, as a matter of law, for the board to say that such showing was insufficient. Kelly v. Jackson ex dem. Morris, 6 Pet. 622, 31 U.S. 622, 8 L.Ed. 523.

Indeed, the board apparently recognized during the course of the proceedings that appellant had made a sufficient showing as to injurious exposure. Mr. Oppenheim, member of the board, in examining Doctor Ellis, stated:

"Doctor, we will make you the Board's witness. You are a medical adviser now. The issue in this case has narrowed down to the man's ability to work in any remunerative occupation. * * *" (f. 69.)

By specification of error No. III, appellant urges that the board erred in holding that appellant "is not incapacitated because of silicosis from performing any work in any remunerative employment."

The board's finding No. VI is as follows:

"Claimant is afflicted with chronic silicosis, grade 3, with suspected, but latent or quiescent pulmonary tuberculosis, not, however, actively infectious. His symptoms are summarized by his physician, Dr. Paul M. Ellis, as follows: Shortness of breath; cough. Dullness in apices of lungs on percussion. Increased breath sounds on auscultation. Diminished expansion of chest on respiration. X-rays show silicosis grade 3, with coalescence of nodules in each apex of the lungs and moderate emphysema at the bases.

"Within the year claimant has lost weight from about 150 pounds to 134 pounds. An x-ray taken on the day of the hearing showed increased markings characteristic of progress of his silicotic condition."

Doctor Ellis further testified that appellant could do some light work which did not involve extended climbing or lifting; that he should not be exposed to being overheated or chilled; that he is susceptible to lung infection; and that if he should get an infection or pneumonia that he would not be a very good risk and "I would rather some other doctor were taking care of him. I don't believe his chances for doing very well would be very good."

Since the termination of his employment with respondent, Small Leasing Company, appellant has only been employed for a period of about three months. This employment was on two different occasions as a laborer and he had to quit his work on each occasion because of shortness of breath, coughing at night, and loss of sleep. The only other work done by appellant was self-employment where he could set his own pace in picking up high-grade rock by hand out of the muck, which did not prove profitable. Appellant, on two occasions, attempted to obtain other employment as a common laborer but was refused employment on account of his physical condition.

The board held that the claimant, at most, proved partial disability from silicosis which, under the statute, is not compensable, and ruled "that on the showing made claimant is not incapacitated because of silicosis from performing 'any work in any remunerative employment,' which is the test of the occupational disease compensation statute as contrasted with the accident compensation statute." Section 72-1216, I.C., reads as follows: "In case of silicosis, 'disablement' means the event of the first becoming actually incapacitated, because of such disease, from performing any work in any remunerative employment; and 'disability' means the state of being so incapacitated."

It is evident that the board interprets the phrase "from performing any work in any remunerative employment" as being more restrictive than the term "total disability" as used in the accident compensation statutes. The board overlooked the reason for the use of the phrase "in any remunerative employment" in Section 72-1216, I.C. Under the general occupational disease compensation law, Section 72-1202, I.C., provides for compensation where the

employee is "disabled from performing his work in the *last occupation* in which he was injuriously exposed to the hazards of such disease." (Emphasis supplied.) The phrase "in any remunerative employment" is used in Section 72-1216, I.C., with reference to silicosis in contradistinction to the term "last occupation" used in Section 72-1202, I.C., with reference to other occupational diseases. There is no essential difference in meaning between the term "total disability" used in the accident compensation statutes and the phrase "incapacitated * * * from performing any work in any remunerative employment" used in the silicosis statute.

In Endicott v. Potlatch Forests, 69 Idaho 450, on page 455, 208 P.2d 803, 806, this court quoted the following from Goble v. New World Life Ins. Co., 57 Idaho 516, 67 P.2d 280, as the appropriate rule in determining total disablement in workmen's compensation cases: "The courts, generally, hold that in order to secure the benefits provided for in policies of insurance by reason of the degree of disability means by the use of such language as is here employed, it is not necessary for the insured to be absolutely helpless, or entirely unable to do anything worthy of compensation, or from which gain might be derived. If he is so disabled that substantially all the avenues of gainful employment are reasonably closed to him his condition is within the meaning of the covenant."

Also, the claimant is not required to seek and perform labor endangering his life or health. Murphy v. Mutual Life Ins. Co., 62 Idaho 362, 112 P.2d 993; Liebmann's Independent Ice Co. v. Ganther, 193 Okl. 218, 142 P.2d 605.

The Industrial Accident Board erred, as a matter of law, in holding, under the showing made, that appellant was not incapacitated from performing any work in any remunerative employment.

The order of the Industrial Accident Board denying appellant's claim is reversed and the cause remanded to the board with instructions to make an award to appellant. Costs awarded to appellant.

HOLDEN, C. J., and GIVENS, TAYLOR and KEETON, JJ., concur.

On Rehearing

Between the original hearing and disposition of this case and the rehearing, HOLDEN, C. J., resigned and SUTTON, District Judge, was called to sit in his place.

PORTER, Justice.

On the rehearing of this cause no question was presented and argued which was not presented and considered on the original hearing. It was not pointed out where the Court had overlooked any applicable statute or principle of law. Further consideration of the questions involved has disclosed no reason for changing the views expressed in the original opinion filed in the cause. I adhere to such original

opinion and deem that it would serve no useful purpose to elaborate thereon.

KEETON, Justice.

After opinion on the merits in the above matter was released, a rehearing was granted and questions submitted re-examined. The pertinent facts are contained in the former opinion.

The definitions of a compensable disability because of accident, occupational disease, or silicosis, are contained in separate legislative acts.

A workman who suffers disability due to an accident (distinguishable from occupational disease or silicosis) is paid a sum over a period of time depending on the extent of the injuries and his disability, total or partial, as the case may be. Sections 72-310 through 72-313, I.C.

Under the Workmen's Compensation Law, if an injured workman does not come within one of the classes defined by the acts as total permanent disability, the question of whether or not he is totally and permanently disabled is one of fact to be determined in the first instance by the Industrial Accident Board, subject to review on appeal by the Supreme Court on questions of law. Section 72-608, I.C.

Where a workman suffers an accident (external violence) arising in the course of his employment, not amounting to total permanent disability, he is paid for partial permanent disability. Section 72-313, I.C.

The liability of an employer to an injured workman (accidents arising out of and in the course of employment) was passed by the legislature in 1917. Subsequently, in 1939, a further and additional liability was created by the "Occupational Disease Compensation Law." Section 72-1201, I.C., to and including Section 72-1235, I.C.

The third class of cases entitling a disabled workman to compensation is provided for in what is commonly referred to as the silicosis act, Sections 72-1215 to 72-1235, I.C.; and a definition of disability due to silicosis is contained in Section 72-1216, I.C., as follows: "In case of silicosis, 'disablement' means the event of the first becoming actually incapacitated, because of such disease, from performing *any* work in any remunerative employment; and 'disability' means the state of being so incapacitated." (Emphasis supplied.)

Section 72-1202 and Section 72-1205, I.C. defining disability, occupational disease, expressly *except* silicosis. Thereafter, disablement due to silicosis is expressly covered by Section 72-1216, I.C., supra. There is no compensation payable for partial disability due to silicosis. Section 72-1218, I.C.

Payments which are to be made to the disabled workman because of silicosis, not coming within Section 72-1216, I.C. above, are expressly provided for in Section 72-1219, I.C.; and payments in different sums and amounts from those provided for

in the original Workmen's Compensation Law or the occupational disease liability, are required. Claimant in this case claims total disability as defined by Section 72-1216, I.C., supra.

We shall, therefore, consider the question of whether or not the claimant has become actually incapacitated from performing any work in any remunerative employment. *If he is not so disabled, he is not entitled to an award.*

Throughout the occupational disease law a clear distinction is made between the disease of silicosis and other occupational diseases or injuries due to external violence. The severance award in silicosis cases provided for in Section 72-1224, I.C., and the sums to which the workman is entitled under Section 72-1219, I.C., clearly enunciate the difference in the liability created by the original Workmen's Compensation Act (injuries due to external violence) and occupational disease liability. Thus, a distinction is made between disability due to silicosis or other compensable disabilities covered by the acts.

The claimant worked for the Small Leasing Co. from 1943 until the plant shut down in November, 1948. His claim was filed with the Industrial Accident Board December 20, 1948, and is for "total disability from working in the mines and also for outside work at the mine property," and he further claims that the disease manifested itself on May 5, 1948. He continued working after May, 1948, to November, 1948, for the respondent Company and according to his testimony, earned $11.60 a day.

According to the witness, he went to the doctor for an examination about December, 1948. His reason for the visit was:

"A. I was full of cold and didn't feel good and that is the time he told me to take a rest. * * *

"Q. You had a bad cold and went down there? A. Uh huh.

"Q. Did you lay off? A. Yes, I lay off.

"Q. For about how long? A. Oh, it must be about three months, I think.

"Q. And did you ever work on the screen after that? A. * * * no, I don't think so.

"Q. But you did work some for the Small Leasing Company? A. Yes.

"Q. What did you do? A. Oh, a little bit of everything,—loaded ore and loaded concentrates and a little bit of everything.

"Q. Just a general handy man around there? A. Yes. * * *

"Q. What work have you done since? A. I worked a little bit for Batts at the Wallace Hospital, but I quit,—*it was a little too* hard. (Emphasis supplied.)

"Q. How long did you work for Mr. Batts? A. It couldn't be more than two or three months.

44

"Q. I understand you worked for them on two different occasions, about a month or two on two different occasions? A. Yes.

"Q. So you worked between two and three months for Mr. Batts? A. Yes.

"Q. That was on two different occasions? A. Yes.

"Q. What kind of work were you doing? A. *Oh, it was packing lumber upstairs into the hospital and mixing concrete and things like that.* (Emphasis supplied.)

"Q. It was all heavy work? A. Yes.

"Q. And you quit Mr. Batts on two different occasions? A. Yes.

"Q. Any why, Mr. Carlson, why did you quit? A. It was too heavy.

"Q. You couldn't do the work? A. That's right.

"Q. What was your condition when you attempted to do heavy work such as packing lumber or walking up the stairs? A. I run out of wind and get tired.

"Q. When you have tried to do a hard day's work, what is your condition when you get home? A. Oh, I am awfully tired."

All above work was done by claimant subsequent to May 5, 1948.

The witness testified as to other work he had done after working for the Small Leasing Company, and Batts, as follows:

"Q. Have you done any other work besides that two or three months with Batts since you left Small Leasing. A. I have been doing a little leasing by myself.

"Q. What were you doing? A. Just picking high grade out of the muck.

"Q. You sorted that out by hand? A. Yes, by hand.

"Q. Were you your own boss on that job? A. Oh, yes.

"Q. You could take all the time you wanted to and go around and sort out the ore you thought was good? A. Yes.

"Q. Did you ever make a shipment of that? A. Yes, but we didn't make any money on it."

The question involved in this case is not whether the claimant made any money, but whether or not he is able to perform any work in a remunerative capacity. The witness testified that in 1947 in the winter he did carpentry work and did the screening in the summer; further, that he worked for respondent Small Leasing Company until they shut down in November, 1948, and after that he loaded concentrates or whatever had to be done. He testified:

"Q. You said you went back and worked three months for them in the mill,—was that when you were doing that work? A. That's right.

"Q. And then when you went to work for Mr. Batts, mixing the concrete, was there dust at that place? A. No, not where we mixed the concrete, but when we was working in the hospital we had to tear down some old stuff and there was some dust there. * * *

"Q. And how long did you work there? A. Well, at the hospital I might have been about three months altogether, two different times, I think. * * *

"Q. And then you had a lease for Federal? A. Yes, since May.

"Q. From May up to the present date? A. Up to the present date." (November 1949.)

While working on the Federal lease, the witness testified that he and helpers picked up ore by hand and shoveled it into a truck. According to the testimony of the witness, with the exception of approximately three months, he worked continuously for himself or others subsequent to the time the silicosis manifested itself, May 5, 1948.

Dr. Paul M. Ellis, the only doctor called at the hearing, testified that it is all right for him (referring to claimant) to work above ground, and further, "He can do a considerable amount of work. I don't think he can do actual hard labor. * * * but he can do employment above ground—that is, work that isn't extremely heavy."

At the time of the hearing, the doctor testified that no tubercular infection had developed. Quoting from his further testimony:

"Doctor, considering the physical condition of this man from your findings and X-ray, do you believe it would be *wise* for this man to work out in the winter where he would be exposed to rain and cold and snow? A. Well, I think, with the proper precaution showed, he could." (Emphasis supplied.)

In response to a question asked by Mr. Oppenheim relative to the capabilities of this claimant in working in a remunerative occupation, the witness answered: "Well, he can work as a carpenter, providing he doesn't have to do a great deal of extended climbing or heavy lifting, and I think he can do a certain amount of that providing it doesn't come time after time. I don't think he could be put to a job of handling heavy timbers all day long which a man of his age could do providing he didn't have this scarring in his lung * * *. He is in better physical condition than anybody would believe if they examined him from his X-rays only, but if he should get *infection, especially tubercular, or massive lobar pneumonia, I don't believe he would be a very good risk. * * *."* (Emphasis supplied.)

In other words, the doctor found the claimant in surprisingly good physical shape, and continued: "I think his ability to work is very good for a man of his age, but he must not be exposed to his occupation and we have advised him that a good many times."

The question involved in this case is whether or not the claimant can work in any remunerative occupation and is not a question of whether he is able to work as a miner. Question by Mr. McCann: "Doctor, don't you think it is important also in an effort to avoid an infection of the lungs

that he should not expose himself to being overheated and chilled and so forth? A. All of those things are important to *every-one* and it certainly applies in his case. * * *" (Emphasis supplied.)

It thus appears that according to claimant's own testimony, with the exception of approximately three months in the winter of 1948 and the spring of 1949, he worked at something continuously, subsequent to May, 1948. The Board on the evidence found:

"Due to the advanced stage of his silicosis claimant is greatly disabled for work. * * * He can do a considerable amount of work above ground. *His ability to work is fairly good for a man of his age.* He cannot perform *sustained* heavy labor of any kind. His education and skills limit him to manual labor, more especially carpentry. He can do light work and *some heavy work* if the latter is not of long or continuous duration. His greatest hazard is the possibility of his acquiring a respiratory or lung infection. * * * (Emphasis supplied.) * * *

"There is no question but what claimant is greatly disabled by silicosis. At most, *the claimant proved partial disability from silicosis,* which under the statute is not compensable. The Board rules that on the showing made claimant is not incapacitated because of silicosis from performing 'any work in any remunerative employment,' which is the test of the occupational dis-ease compensation statute as contrasted with the accident compensation statute, * * *."

The Board saw the witnesses, heard them testify, and as a matter of law, it cannot be concluded there is no evidence to sustain the finding of the Board that at most the claimant had suffered only partial disability, and further, "He can do a considerable amount of work above ground. His ability to work is fairly good for a man of his age." This finding of the Board is sustained by competent, substantial evidence, and it therefore becomes unnecessary to determine whether or not the Board was correct in its ruling that "Claimaint in this proceeding has failed to show a hazardous exposure subsequent to his underground work in 1943-1944," or the distinction—if any—between liability due to total disability by reason of an industrial accident and the definition of total disability under the silicosis act, and such distinction—if any—will therefore not be discussed or decided.

Under many established precedents unnecessary to cite here, where there is substantial, competent evidence to sustain the findings and conclusions of the Board, they will not be disturbed on appeal.

▆ There is competent, substantial evidence in this case to sustain the finding that the claimant, at most, had suffered partial disability due to silicosis, which, under the law, is not compensable.

The order of the Industrial Accident Board should be affirmed and no costs allowed.

GIVENS, Chief Justice.

■■ I continue to adhere to and concur in the opinion heretofore rendered in this case by Porter, J., holding appellant had been exposed as contemplated by the statute, and in effect that the criterion for determining total disability is the same under Sections 72-310 and 72-1216, I.C., as expressed in the cases referred to in said opinion.

■ I have concluded, however, the finding and conclusion of the Board that claimant was not totally disabled under such standards, is sufficiently sustained and justified by the record that it should be and is affirmed. Walker v. Hogue, 67 Idaho 484 at page 491, 185 P.2d 708; Hill v. Potlatch Forests, Inc., 70 Idaho 14, 211 P.2d 150 at 152.

I am authorized to state that TAYLOR, J., concurs in these views.

SUTTON, District Judge.

■ I did not participate in the original hearing or decision in this case. It is my opinion the case is disposed of by the familiar rule that the findings of the Board, if supported by substantial, competent evidence, will not be disturbed on appeal. In this case, the Board found on substantial evidence that the claimant was not totally disabled within the meaning of Section 72-1216, I.C. I think the Board might well have found him to have been disabled, but they did not. The order of the Board should be affirmed.

Accordingly, the order of the Board denying compensation is affirmed. No costs allowed.