276 P.2d 964

William L. FRISK, Claimant, Appellant, Cross-Respondent,

v.

GARRETT FREIGHTLINES, Inc., Employer, and Truck Insurance Exchange, Surety, Respondents, Cross-Appellants.

No. 8184.

Supreme Court of Idaho.

Nov. 23, 1954.

Zener & Peterson, Pocatello, for appellant.

29

Merrill & Merrill, Pocatello, Smith & Smith, Boise, for respondents.

THOMAS, Justice.

Appellant will be referred to as claimant. Cross-appellants will be referred to as employer and its insurer.

Claimant had worked for employer for over seven years prior to on or about February 18, 1952. On this date and for some time prior thereto he had worked in the machine and repair shops of employer at Pocatello, Idaho, as an automotive mechanic. His work required him to come in contact with oils, greases, cleansers, detergents and steam vapor impregnated with detergents.

As a result of such contacts claimant acquired acute dermatitis venenata which was first manifested on February 18, 1952. His hourly rate of pay for a 40-hour week at that time was $1.85. Soon thereafter, following medical treatment and upon the doctor's advice, he left the employment temporarily, with the knowledge and consent of employer. He worked as a common laborer for another employer for six weeks during which time he experienced no difficulty from the disease; he then returned to his former employment; after about three days the disease became activated.

As a result of the disease he was off work from May 26th to June 29th, 1952, during which time it gave him no trouble; he then resumed work the following day and after about six days and on July 7th the disease again became active so he transferred as a common laborer to the docks of employer and again the condition cleared up. Sometime later and on or about October 1st of that year upon advice of his doctor he returned to his employment as an auto mechanic at $1.96 per hour. Within four days the disease was active and he was forced to lay off on vacation pay until November 10, 1952, when he again returned to the dock where he has at all times since worked with no reactivation of the disease.

At the time of the hearing the hourly rate of pay for a 40-hour week as an auto mechanic was $2.10 and for a 48-hour week as a dock worker $1.59.

Upon the conclusion of the hearing the Board denied claimant compensation for total and permanent disability benefits under the Occupational Disease Act, concluded that he was entitled to compensation for partial permanent disability residual of his occupational disease, and retained jurisdiction to determine the extent of such partial permanent disability upon proper application and hearing further evidence thereon.

Claimant appealed from the order denying compensation for total and permanent disability. Employer and its insurer cross-appealed from the Board's Order entitling claimant to partial permanent disability compensation.

The essential questions raised by both appeals relate to the construction and application of the Occupational Disease Law.

Claimant contends that he is entitled to total permanent, not partial permanent disability benefits. On the other hand, employer and insurer urge that no jurisdiction rests with the Board as a matter of law to make any award to claimant except that awarded for temporary total disability during the period he was actually and wholly incapacitated because of dermatitis.

Section 72–1202, I.C., of the Occupational Disease Compensation Law in pertinent part provides:

"Where an employee * * * suffers from an occupational disease, as defined in section 72–1204, and is thereby disabled from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease, or dies as a result of such disease, and the disease was due to the nature of an occupation or process in which he was employed * * *, the employee, or, in case of his death, his dependents, shall be entitled to compensation, as provided in the Workmen' Compensation Law, as if such disablement or death were an injury by accident, except as otherwise provided in this chapter; * * *."

Compensation, under the Occupational Disease Law, shall be payable for disability or death of an employee resulting from certain designated occupational diseases, including:

"Dermatitis venenata, that is, infection or inflamation of the skin, furunculosis excepted, due to oils, cutting compounds, lubricants, liquids, fumes, gases, or vapors in any occupation involving direct contact therewith, handling thereof or exposure thereto." Section 72–1204, subd. 9, I.C.

Section 72–1205, I.C., defines disablement to mean:

"* * * the event of an employee's becoming actually and totally incapacitated, because of an occupational disease, from performing his work in the last occupation in which injuriously exposed to the hazards of such disease; and 'disability' means the state of being so incapacitated."

Three medical experts testified. The attending physician, a dermatologist, expressed his opinion that claimant was totally and permanently disabled so far as return to his work in the machine shop as a mechanic was concerned; that he could carry on in other fields where he would be able to avoid contact with lubricants, oils and vapors and he was not disabled for work in a general sense but was industrially employable.

Two other doctors expressed their respective opinions. One of these doctors was of the opinion that claimant was not disabled; the other, a dermatologist, was of the opinion that it would be extremely unlikely that claimant could pursue his previous occupation as a mechanic without further difficulty and in such sense he was disabled.

The Board found that the word "occupation" in section 72–1205, I.C., did not mean the employer's general industry, as asserted by employer, nor the employee's specific job, as asserted by claimant; that it denotes the employee's customary, general trade skill which in the instant case was that of mechanic; that claimant was not totally and permanently disabled for work in the general sense of such term nor totally incapacitated for work as a mechanic.

The Board found further that claimant's disability is partial and until medical science discovers a cure it is prospectively permanent so far as engaging in work as an automotive mechanic, either for his present employer or for any other shop with similar working conditions and exposures. This is tantamount to a finding of partial and permanent incapacity for work in the employment in which he was last injuriously exposed to the hazards of dermatitis. Moreover, the Board did specifically find "as a fact and rules as a matter of law that claimant Frisk is partially permanently in-

capacitated for work in the employment in which he was last injuriously exposed to allergens inducing dermatitis".

It is the contention of claimant that even though he can do and did other work and may continue to engage in other work, nevertheless he should be entitled to compensation on a total and permanent basis because he is still totally and permanently incapacitated from performing his work in the last occupation (auto mechanic) in which he was injuriously exposed to the hazard of dermatitis.

■ It is conceivable that claimant or anyone similarly situated might secure employment in which his earnings would exceed the highest prevailing rate of pay for an auto mechanic; yet he insists he is entitled to total and permanent disability compensation augmented by whatever he is able to earn at other employment. No such absurd and inequitable consequences were intended by the legislature. He is still able to perform substantial and material aspects of his occupation with reasonable continuity. While the scope of his endeavors in his occupation may be somewhat limited, a market exists for his services therein as well as in other fields. It would be absurd and contrary to the facts and spirit of the Act to classify him as totally disabled for any and all work. See Endicott v. Potlatch Forests, 69 Idaho 450, 208 P.2d 803.

■■ Unfortunately the phraseology of the statutes is not free from ambiguity; thus this court must resort to construction to ascertain the legislative intent. The court should and will, in considering such language, keep in mind the declared policy of the Workmen's Compensation Law as a whole, section 72–102, I.C., together with the Occupational Disease Law, to seek out the primary objectives to be achieved, the mischiefs sought to be avoided and the remedies intended to be applied. If the language employed will permit, we should and will refrain from adopting a construction which will lead to unjust, inequitable, oppressive or absurd consequences. This principle of statutory construction is of universal application and there is no need to support it by the citation of authorities. It applies to the entire Act which should and will be liberally construed with a view to effect its objects and promote justice.

■ It is the major purpose and the general spirit and tenor of the provisions of the Workmen's Compensation Law, except where it provides for specific indemnities, section 72–313, I.C., that compensation is provided to make good for the loss or impairment of earning power resulting from injury and requiring industry to bear a burden which otherwise might be cast upon the worker and his family. Kelley v. Prouty, 54 Idaho 225, 30 P.2d 769. The statutes and logic impel such purpose and ob-

jective be applied with equal force to dermatitis.

The Workmen's Compensation Law in appropriate cases is designed to and does provide for compensation in cases of injury by accident for total permanent disability, temporary total disability, permanent partial disability and temporary partial disability, in addition to the specific indemnities provided in section 72–313, I.C. The compensation and benefits under the Occupational Disease Law shall be as provided in the Workmen's Compensation Law. Section 72–1207, I.C.

Employer contends that claimant, under the evidence adduced, was entitled to compensation on a temporary total basis only, for which he was paid, because since about November 10, 1952, he has not suffered from, nor does he have dermatitis; that dermatitis as an occupational disease is "infection or inflammation of the skin", section 72–1204, I.C.; that he has not since November 10, 1952, had any infection or inflammation of the skin; that the affliction was temporary and he is now cured, only the allergy remaining which is not compensable; that the legislature recognized the disease is not permanent but might recur and in such event has specifically provided compensation under section 72–1225, I.C. This section provides as follows:

"Recurring dermatitis.—A person who has suffered disability from dermatitis and has received compensation therefor shall not be entitled to compensation for disability from a later attack of dermatitis due to substantially the same cause, unless, immediately preceding the date of the later disablement, he has been engaged in the occupation to which the recurrence of the disease is ascribed and under the same employer for at least sixty days."

■ The Board found and the evidence will support its finding that claimant suffers from dermatitis, an occupational disease, and, because thereof, is actually totally and permanently incapacitated and disabled from performing his work as an auto mechanic. This finding brings him within the requirements of sections 72–1202 and 72–1205, I.C.

This finding encompasses the duration and extent of the disablement to work as an auto mechanic; it is permanent and total. For such disablement to perform his work as an auto mechanic the Act provides that he shall be compensated.

■ It is not necessary to decide whether dermatitis is a temporary and recurring or a permanent disease. The duration of the disease does not give rise to, limit or control his right to compensation; rather it is the effect of such disease. If it actually and totally disables and incapacitates him from performing his work (auto mechanic) in his last occupation where injuriously exposed to such disease he is

entitled to compensation. No more need be shown to bring him within its protection. Section 72–1225, I.C., supra, with reference to recurring dermatitis has no application under the record. This applies to a person who has *previously* received compensation because of disability suffered from dermatitis and subsequently suffers a later attack, due to the same cause; the later attack, if due to substantially the same cause, is compensable if such person has been engaged in the occupation for at least sixty days under one employer, who need not be the same employer under whom the first attack occurred.

The Board found that no evidence was adduced by either party as to the extent of claimant's partial permanent disability.

The Board ruled that claimant was entitled to compensation for partial permanent disability residual of his occupational disease; that for the reason no evidence was adduced as to the extent of such partial permanent disability, jurisdiction was retained to open the matter upon application for the reception of evidence in this respect.

The Order of the Board is affirmed.

No costs allowed.

PORTER, C. J., and GIVENS, TAYLOR and KEETON, JJ., concur.

This opinion was written and agreed upon prior to the death of THOMAS, J., on November 22, 1954.