376 P.2d 198

Donald M. LANE, Employee, Plaintiff-Appellant,

v.

GENERAL TELEPHONE COMPANY OF the NORTHWEST, Employer, and Continental Casualty Company, Surety, Defendants-Respondents.

No. 9118.

Supreme Court of Idaho.

Nov. 15, 1962.

112

J. H. Felton, Lewiston, for appellant.

Moffatt & Thomas, Boise, for surety, respondent. Hawkins & Miller, Coeur d'Alene, for employer-respondent.

McQUADE, Justice.

On April 9, 1954, the claimant, Donald M. Lane, suffered a personal injury caused by an accident arising out of and in the course of his employment with the General Telephone Company of the Northwest. The employer was secured for its workmen's compensation liability by Continental Casualty Company. The claimant was a lineman for the telephone company. In the course of his employment, the claimant as such lineman was working on a pole near Coeur d'Alene, Idaho, when the pole "snapped off at the ground." Lane, who was using a safety belt, was unable to unhook the belt and free himself, and both Lane and the pole fell to the ground, with the pole landing on top of him, fracturing his back and left ankle and causing other injuries.

At the time of his accidental injury, claimant was 43 years of age, married, and had three dependent minor children. At the time of the hearing on June 15, 1961, his

family status had remained unchanged, the children then being 12, 10½ and 8½ years of age.

Following the accidental injury, Lane had a long course of medical treatment. After disputes arose between the parties concerning compensation, claimant on March 5, 1956, filed a petition for a hearing before the Industrial Accident Board. A hearing was held, and thereafter the board entered an award. In addition, the board entered a supplemental award on November 29, 1956, under which Lane was awarded the following benefits: Total temporary disability compensation from April 9, 1954, to February 25, 1956, and from August 5, 1956, to August 20, 1956, one hundred weeks and two days at $37.00 per week, a total of $3,710.60; medical and kindred expenses to November 29, 1956, totaling $2,728.50; and claimant's attorney's fees as punitive costs under I.C. § 72–611, in the amount of $500.00. In addition the board found that claimant was entitled to specific indemnity for partial permanent disability, equivalent to the loss of a leg at the hip, for one hundred eighty weeks from February 25, 1956, at $25.00 per week, totaling $4,500.00. The charge of $90.00, representing an excise on specific indemnity, payable to the State Treasury brought the award to a total of $11,529.10, of which $11,439.00 was payable either to or on behalf of the claimant. The surety has paid all amounts ordered by the board in the above award with the ex-

ception of the award of specific indemnity for partial permanent disability. Of this amount, the surety has paid $2,850.00, represented by payments of $25.00 per week from February 25, 1956, to May 3, 1958, or a total of 114 weeks.

On October 1, 1957, claimant filed a petition to modify the Industrial Accident Board's award of November 29, 1956, on grounds of a change of condition, alleging that his condition had changed to such an extent that surgery on his back was required; that claimant was suffering from greatly increased pain; that claimant's condition with regard to urination and bowel movements had worsened; that claimant's condition required immediate surgery; that urological treatment should also be given to the claimant; and that claimant "would never be able to work unless such surgical proceedings are performed in the near future." It was further contended in the petition for modification that claimant's condition had changed from a condition of being able to perform light work to total permanent disability. The surety agreed to the requested operation and, at a hearing on March 17, 1958, the parties stipulated that payments for partial permanent disability would be suspended and payment for total temporary disability would be substituted.

Lane's corrective surgery was performed May 5, 1958. The board made a finding that Lane's orthopedic low back maladies were

surgically healed as of July 21, 1959. The board made a finding that Lane was clinically healed with respect to urological maladies as of May 29, 1959.

On petition to modify the board's award of November 29, 1956, testimony and documentary evidence was presented to the board in Coeur d'Alene, on June 15, 1961, and in Spokane, Washington, on June 19, 1961.

Dr. Platner testified that he was of the opinion Lane was incapable of working 8 hours a day at manual labor, and, therefore, Lane was 100% disabled. He then stated that from the standpoint of all activities, Lane had permanent partial disability of 50% of the value of the loss of function of his total body. It was his opinion that Lane still needed medication and that this need would continue indefinitely. Dr. Platner was unable to compare the 1961 condition of Lane with his condition in 1956 because he did not start treating him until 1957. He did relate, however, that in his opinion, there was no worsening of Lane's condition; that Lane was surgically healed insofar as his spinal fusion was concerned October 29, 1959; and that Lane's condition had improved between 1959 and May, 1961, to the extent that his bladder became free from infection during that period of time.

Claimant testified that prior to his operation in 1958, he had on occasion worked as a janitor, and as an assistant recreational director. Subsequent to the operation he worked as a janitor and drove a school bus for two or three months. On June 1, 1960, he began working as a maintenance man for the Manor Nursing Home at Sandpoint, at $250.00 per month. Lane further testified as to his physical condition, stating that he continues to have trouble with regard to urination and bowel movements; that he cannot do heavy work; that he suffers from pain and muscle spasm from overwork or overexercise; and that he cannot stand, sit or lie down for any extended period of time without experiencing pain.

Dr. Grieve, orthopedic surgeon, testified at the hearing in 1956 that he considered Lane's permanent partial disability to be the equivalent of 100% of the loss of a leg at the hip. Dr. Grieve examined Mr. Lane on June 2, 1961, and testified that it was his opinion Lane "had a permanent partial disability at this time equal to 75% of the loss of the leg at the hip so that an artificial limb could not be worn. Of course, he had a disability of 100% before, so that would make him 25% better now than he was before." On cross-examination, Dr. Grieve agreed that his examination did not include other of Lane's injuries.

Dr. Jensen, a urologist, tesitfied Lane's condition was fixed and static insofar as his urination maladies were concerned, and that the infection had been cleared up. He did state, however, that Lane's condition was

such that there was a possibility of a recurrence of the infection.

The board held claimant was entitled to additional total temporary disability compensation from September 7, 1959, to October 29, 1959, a total of 7¾ weeks at a rate of $37.00 per week, amounting to $274.-86. The board allowed medical expenses totaling $422.47 and disallowed miscellaneous expenses in the amount of $134.00 on the grounds that they were incurred without pre-authorization or request and after treatment by both Dr. Platner and Dr. Jensen had ceased and after Lane had returned to work. The board also held that the surety did not have to pay fees charged by Dr. Platner for an examination of Lane on May 26, 1961, and for testifying at the hearing. This item, amounting to $395.00 was held to be a part of the litigation and therefore not chargeable to defendants as part of treatment under I.C. § 72–307.

The board further found that Lane's condition had improved over what it had been in November, 1956, and determined claimant's residual partial disability as of October 29, 1959 (the date the board found Lane to be sufficiently rehabilitated to return to work) was equivalent to 90% of the loss of a leg at the hip, and awarded specific indemnity for 162 weeks. Because Lane had already received partial permanent compensation for 114 weeks, the board held that he was entitled to specific indemnity for 48

weeks at the rate of $25.00 per week, or a total amount of $1,200, all of which had accrued by the date of the board's award. It is from this award that claimant appeals.

Appellant contends "the Board erred in failing to find total permanent disability and to make a suitable award therefor." In regard to the claim that Lane is totally disabled, appellant makes the following argument:

"Lane is unable to return to his original work. Compensation should have been measured by what a workmen of the same class or grade can earn in the employment as a telephone lineman. There is no question but that in this particular work Mr. Lane is totally disabled."

In McCall v. Potlatch Forests, 67 Idaho 415, 182 P.2d 156, the court considered the same question. There the appellant contended that if the injured workman could no longer do the type of work he was doing at the time of the injury he is totally disabled within the meaning of our Workmen's Compensation law. This court therein noted that appellant since his injury had been unable to perform the same type of work, and further noted that the appellant was gainfully employed in another occupation. The court then held that "Under such circumstances it cannot be [ruled] as a matter of law that appellant was totally disabled. The extent of his disability raises no more

than a question of fact, and the Board's finding thereon is not subject to review here * * * ."

It is quite possible that Lane will never be able to work as a lineman again; however, this is not the test for total disability. McCall v. Potlatch Forests, supra. The ultimate test is ability to work at gainful employment. Crawford v. Nielson, 78 Idaho 526, 307 P.2d 229.

From the testimony already referred to in this opinion, and from the record as a whole, it is clear that the extent of claimant's change of condition since November 29, 1956, was a question of fact to be determined by the board. Ample testimony supports the finding that Lane was not totally and permanently disabled. There being substantial evidence to support the finding of fact by the board, such finding will not be disturbed by this court. Art. 5, § 9, Idaho Constitution; Brewster v. McComb, 78 Idaho 228, 300 P.2d 507; Golay v. Stoddard, 60 Idaho 168, 89 P.2d 1002; In re Smith, 72 Idaho 8, 236 P.2d 87.

Appellant further contends the board erred in basing its entire decision upon testimony of experts and totally disregarded testimony of lay witnesses. This contention is without merit. The board, in its findings of fact made specific reference to the testimony of both Mr. and Mrs. Lane. That the board may have given more weight to the testimony of the doctors in its determination of the extent of permanent disability of the claimant, is not grounds for reversal if the findings and award of the board are supported by competent and substantial evidence. In Nitkey v. Bunker Hill & Sullivan Mining & Con. Co., 73 Idaho 294, 251 P.2d 216, this court stated as follows:

"The weight and credibility of testimony in a compensation case, including the opinions of experts hypothetically stated, is for the Board. Benson v. Jarvis, 64 Idaho 107, 127 P.2d 784; Stroscheim v. Shay, 63 Idaho 360, 120 P.2d 267; Fields v. Buffalo-Idaho Min. Co., 55 Idaho 212, 40 P.2d 114; In re MacKenzie, 54 Idaho 481, 33 P.2d 113. Moreover, the extent of the disability is a fact question, McCall v. Potlatch Forests, 67 Idaho 415, 182 P.2d 156, and a finding of fact by the Board is conclusive on appeal when supported by competent evidence. * * *"

Appellant contends the board erred in failing to find temporary total disability from the time of the accident until the hearing. As noted previously in this opinion, the board held that Lane was entitled to total temporary disability from May 5, 1958, to October 29, 1959. I.C. § 72–310(a) provides in part as follows:

"Where the injury causes total disability for work, the employer *during*

*such disability* shall pay the injured employee weekly compensation \* \* \*." (Emphasis supplied.)

I.C. § 72–312, relating to the right of an injured person to partial disability, provides in part as follows:

"Where the injury causes partial temporary disability for work, the employer, *during such disability,* \* \* \* shall pay the injured workman a weekly compensation \* \* \*."

Payment was made for periods of total disability and by award of the board there was payment for partial permanent disability. Claimant's contention is without merit.

■ Appellant complains of the board's refusal to require the surety to pay certain drug bills. These expenses were incurred between December 18, 1959, and June 14, 1961. The board found that the expenses "were incurred without pre-authorization or request therefor, after treatment by both Dr. Platner and Dr. Jensen had ceased, and after Lane had returned to work." For this reason, they disallowed claimant's request for reimbursement from defendants.

I.C. § 72–307 provides that:

"The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches and apparatus, as may be required or be requested by the employee immediately after an injury, and for a reasonable time thereafter. If the employer fails to provide the same, the injured employee may do so at the expense of the employer. \* \*"

This court interpreted I.C.A. § 43–1107, now I.C. § 72–307, in Totton v. Long Lake Lumber Co., 61 Idaho 74, 97 P.2d 596, as follows:

"That section makes the liability of the employer to pay expenses incurred by the employee for hospitalization, medical and surgical treatment, contingent on the failure of the former to provide it."

See also Epperson v. Tex.-Owy. M. & D., 63 Idaho 251, 118 P.2d 745. There is no evidence showing Lane requested the surety to furnish the items in question, or that the surety failed or refused to provide the same. It appears the items were purchased subsequent to the time when Lane was found to be surgically healed. There is ample and substantial evidence to support the finding of the board, and the grounds for their refusal to allow the expenses is in compliance with the interpretation of § 72–307, as established by this court in Totton v. Long Lake Lumber Co., supra. Therefore, the board did not err in refusing to order the surety to pay the drug bills in question.

■ Appellant also contends that the board erred in refusing to require the insurance company to pay Dr. Platner for his

last examination of the claimant and for time spent testifying at the hearing. It should be noted that the examination was made for the purpose of testifying before the board. This claim is for expense of litigation rather than a charge for treatment of the claimant, and was properly disallowed.

Appellant next assigns as error the failure of the board to order the surety to pay claimant's attorney fees. I.C. § 72–611, provides that if it is determined the employer or his surety contested a claim for compensation without reasonable grounds, the employer or his surety shall pay reasonable attorney fees in addition to compensation. The findings of fact and award of the board, which reduced the amount payable by the surety to the claimant for partial permanent disability, clearly show that the surety had reasonable grounds for contesting the claim of Lane. Accordingly, the claimant was not entitled to attorney fees. See Burch v. Potlatch Forests, Inc., 82 Idaho 323, 353 P.2d 1076; Rivera v. Johnston, 71 Idaho 70, 225 P.2d 858.

After careful consideration of all errors assigned we conclude the award should be affirmed and it is so ordered.

Costs to respondents.

SMITH, C. J., and TAYLOR, KNUDSON and McFADDEN, JJ., concur.