457 P.2d 413

Lester M. GRIFFIN, Claimant-Respondent Cross-Appellant,

v.

POTLATCH FORESTS, INC., and Workmen's Compensation Exchange, Defendants-Appellants Cross-Respondents.

No. 10251.

Supreme Court of Idaho.

July 18, 1969.

Blake, Feeney & Mosman, Lewiston, for appellant.

Paul C. Keeton, Lewiston, for respondents.

DONALDSON, Justice.

Claimant (respondent, cross-appellant) Lester M. Griffin brought this action

against his employer, defendant (appellant, cross-respondent) Potlatch Forests, Inc., its surety, defendant (appellant, cross-respondent) Workmen's Compensation Exchange, defendant Treasurer of the State of Idaho, and defendant Industrial Special Indemnity Fund, for relief under the workmen's compensation law.

The facts reveal that Griffin had been employed by Potlatch since 1941. In 1942 his left leg was injured in a logging accident while employed by Potlatch. Under the existing workmen's compensation laws he received $864.00 total temporary disability payments and $1,782.00 partial permanent disability payments. His permanent partial disability was rated as equivalent to 75% of the loss of the left leg at the knee.

January 7, 1965, in the course of his employment with Potlatch, Griffin suffered an accidental injury to his back while attaching a blade to a bulldozer. As a result of the injury, a hemilaminectomy and a spinal fusion were performed. Griffin became surgically healed on about March 7, 1966.

At the time of the accident, he was employed as an assistant mechanic with an average weekly salary of $101.40. He was married, 51 years old, and had two children under the age of eighteen living at home. One of the children became eighteen on July 24, 1965, and left the household on that date. The other became eighteen on December 18, 1966.

Medical evidence revealed that in addition to the earlier injury to the left leg, which necessitated the use of some form of leg brace, claimant also suffered from severe arthritis of the right leg. On May 3, 1966, Dr. George Wallace, one of the attending physicians, rated the permanent partial disability due to the 1965 accident as 10% of the loss of a leg at the hip. On June 6, 1966 he revised his estimate to 50% of the loss of a leg at the hip (precluding use of an artificial limb). Dr. Joseph Lynch, another attending physician, apparently concurred in this estimate.

At a hearing on November 15, 1967, Dr. Wallace, who had re-examined the claimant just prior to the hearing, testified that Griffin was totally and permanently disabled *from continuing in his former employment*; that 50% of the disability was due to the 1965 accident and 50% to the pre-existing condition; and that the partial permanent disability due to the 1965 injury should continue to be rated at 50% of the loss of a leg at the hip (precluding use of an artificial limb). He also testified that by 50% of the loss of a leg at the hip, he meant a partial permanent disability equivalent to 50% of the whole man, or 50% "unspecified," as the term is used in the State of Washington.

March 21, 1968, the Industrial Accident Board made the following awards:

```
Medical Expenses ---------------------------------------$2,124.84
Total Temporary Disability
     Jan. 28, 1965–July 24, 1965 -----------------------$1,138.37
Total Temporary Disability
     July 24, 1965–March 7, 1966 ----------------------$1,329.54
```

Both of these awards had been paid prior to institution of this action.

Concerning partial permanent disability the Board ruled:

"Because of his left leg and knee industrial injury of October 1, 1942, and the severe arthritis of his right leg, claimant's physical impairment and residual disability resulting from the back injury of January 7, 1965, is greater than such would be without the pre-existing conditions. Therefore the Board finds and rules that claimant has a permanent partial disability of 75 percent as com-

pared to the loss of a leg at the hip attributable to the accident and injury of January 7, 1965."

Specific indemnity was awarded for partial permanent disability equivalent to 75% of the loss of a leg, for a period of 135 weeks from March 8, 1966, at the rate of $30.00 per week, an aggregate of $4,050.00.[1] From this were deducted overpayments for total temporary disability compensation in the sum of $97.09. The specific indemnity award thus was $3,952.91. That part of the petition for relief which named the State Treasurer and the Industrial Special Indemnity Fund as defendants was dismissed.

Cross-appellant Griffin contends that he is entitled to an award for total permanent disability. A review of the transcript and exhibits before us reveals that the medical witness, Dr. George T. Wallace, felt Mr. Griffin to be incapable of performing his old job, but to be physically capable of handling a desk job or other type of light work, not involving lifting or strenuous physical exertion. It also appears that Griffin owns and operates a small farm.

The total disability compensation statute, I.C. § 72–310(a), states in part:

"Where the injury causes *total disability for work*, the employer during such disability shall pay the injured employee weekly compensation in accordance with the following schedule * * *." (emphasis supplied)

█ It is the purpose of the Workmen's Compensation Law, except where it provides for specific indemnities (I.C. § 72–313), that compensation be provided to make good for the loss or impairment of earning power resulting from on-the-job injury, and that industry be required to bear the burden which otherwise would fall on the worker and his family. Arnold v. Splendid Bakery, 88 Idaho 455, 401 P.2d 271 (1965); Crawford v. Nielson, 78 Idaho 526, 307 P.2d 229 (1957); Frisk v. Gar-

rett Freightlines, 76 Idaho 27, 276 P.2d 964 (1954); Kelley v. Prouty, 54 Idaho 225, 30 P.2d 769 (1934).

█ The ultimate test is the claimant's ability to work at gainful employment, not only the amount of wages he is able to earn. Lane v. General Telephone Company of Northwest, 85 Idaho 111, 376 P.2d 198 (1962); Crawford v. Nielson, *supra*. Wages, however, may be some evidence on the issue of claimant's ability to work at gainful employment.

"However, by total disability is not meant that the injured person must be absolutely helpless or entirely unable to do anything worthy of compensation. An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled." Arnold v. Splendid Bakery, *supra*, 88 Idaho at 463, 401 P.2d 271 at 276; accord Crawford v. Nielson, *supra*; Carlson v. Small Leasing Co., 71 Idaho 35, 225 P.2d 469 (1950); Endicott v. Potlatch Forests, 69 Idaho 450, 208 P.2d 803 (1949).

The issue in total permanent disability cases is not whether claimant is able to perform his former work, but whether he is able to work at gainful employment. Lane v. General Telephone Company of Northwest, *supra*; see, Frisk v. Garrett Freightlines, *supra*; McCall v. Potlatch Forests, 67 Idaho 415, 182 P.2d 156 (1947).

██ The determination of the extent of disability is a factual matter. If supported by substantial, competent evidence, the Industrial Accident Board's finding thereon will not be reversed. Lane v. General Telephone Company of Northwest, *supra*; McCall v. Potlatch Forests, *supra*; Idaho Const., art. 5, § 9; I.C. §§ 72–608, 72–609. We are satisfied that the finding of the Board that claimant Griffin was not

1. The Board evidently used the 1959 amendment to I.C. § 72–313 in reaching this sum. The 1959 amendment allowed maximum benefits of $30.00 per week. The statutory limit since has been raised.

*totally and permanently disabled for work* is supported by the record.

In passing we note that in Endicott v. Potlatch Forests, *supra*, the Board found the claimant, under almost identical facts, to be totally and permanently disabled for work. This court upheld the permanent disability compensation award as supported by the evidence. As we stated before, however, the extent of disability is a factual issue to be resolved by the Board. That the Board made different determinations in similar factual situations does not mean that it was correct in one instance and wrong in the other.[2] It indicates merely that no two sets of facts are entirely identical, and that the Board, with the witnesses and parties actually before it, is in a better position to determine factual issues than is the Supreme Court, with nothing to review but a cold record.

■ Appellant Potlatch Forests contends that the specific indemnity compensation award for permanent partial injury equivalent to 75% of the loss of a leg at the hip was erroneous. Claimant Griffin candidly admitted in his brief and oral argument that the award was not supported by the evidence. In regard to specific indemnity compensation, we have said:

> " * * * this court has recognized that apportionment of compensation is to be made as between disability caused by or resulting from industrial accident and disability caused by or resulting from pre-existing injury, disease or condition residual from previous injury, and that the ratio of apportionment is for the board's determination." Wilson v. Gardner Associated, Inc., 91 Idaho 496, at

502, 426 P.2d 567 at 573 (1967); accord, Scott v. Aslett Construction Company, 92 Idaho 834, 452 P.2d 61 (1968); Dawson v. Hartwick, 91 Idaho 561, 428 P.2d 480 (1967); see, I.C. § 72–323.

This the Board failed to do.

At the time of the accrual of the cause of action for claimant's permanent partial disability, Idaho law did not permit the rating of partial permanent disability in terms of specific indemnity comparable to a percentage of total permanent disability or on the basis of comparable loss of the "whole man."[3] Arnold v. Splendid Bakery, *supra*; Hix v. Potlatch Forests, Inc., 88 Idaho 155, 397 P.2d 237 (1964). Thus the only competent evidence in the record concerning permanent partial disability indicates that claimant's permanent partial disability *resulting from the 1965 accident* was equivalent to 50% of the loss of a leg at the hip (precluding use of an artificial limb). The Board's award of 75% of the loss of a leg at the hip was unsupported by any evidence and was incorrect as a matter of law.[4]

The specific indemnity awarded to claimant must be limited to indemnity for partial permanent disability equivalent to 50% of the loss of a leg at the hip (precluding use of an artificial limb). The award, therefore, is modified and the cause is remanded to the Industrial Accident Board with instructions to enter a new award in conformity with the view expressed herein. No costs allowed. I.C. § 12–107.

McFADDEN, C. J., and McQUADE and SHEPARD, JJ., concur.

---

2. This assumes, of course, that the determination in each instance was supported by some substantial, competent evidence.

3. I.C. § 72–313 since has been amended to abrogate this rule of law. Compare I.C. § 73–101 with Frisbie v. Sunshine Mining Company, 93 Idaho 169, 457 P. 2d 408 (1969).

4. The instant case is distinguishable from our recent decision in Johnson v. Boise

Cascade Corporation, 93 Idaho 107, 456 P.2d 751 (1969). In *Johnson*, there was some evidence to support the Board's determination of the degree of partial permanent disability. In the case now before us, no such evidence is present. Furthermore, it is obvious from the award of the Board, which we have quoted above, that no attempt was made to apportion the degree of disability between the accident in question and pre-existing injury, disease, or residual condition.

SPEAR, Justice (dissenting):

The majority apparently concedes that "Griffin was totally and permanently disabled *from continuing in his former employment.*" Yet despite this "permanent disability," the majority would still limit the Board's none-too-generous 75% award to an award of 50% partial permanent disability. With this conclusion I cannot agree. If claimant is permanently disabled, he is entitled to 100% permanent disability compensation, not to 50 or 75 percent permanent *partial* disability compensation.

As Professor Larson has stated in his treatise on Workmen's Compensation:

"The total effect of two successive injuries may be much greater than the sum of schedule allowances for the parts * * *.

"The successive-injury problem arises from the obvious fact that the combined effect of two physical disabilities is often far greater than would be reflected by merely adding together the schedule allowances for each injury existing separately. The loss of a leg, which would ordinarily mean only partial disability to a normal person, results in total disability to the man who has already, from whatever cause, lost the other leg." 2 Larson's Workmen's Compensation Law, §§ 59.00, 59.10 (1968).

In the case at bar, the effect of the doctors' testimony is that claimant lost one leg prior to January 7, 1965, and lost another leg as a result of the accident he suffered on that date. Yet, by the majority's reasoning, the claimant is to be compensated as though he still had one good leg.

Since both of claimant's injuries occurred while employed by the same employer, questions of apportionment and second injury fund liability are not involved. The general rule, that the employer is liable for the entire disability resulting from a compensable accident, becomes operable. I.C. § 72–315(b); McNeil v. Panhandle Lumber Co., 34 Idaho 773, 203 P. 1068 (1921); Kelley v. Prouty, 54 Idaho 225, 30 P.2d 769 (1934); 2 Larson's Workmen's Compensation Law § 59.-10 (1968). See also, Colorado Fuel & Iron Corp. v. Industrial Commission, 151 Colo. 18, 379 P.2d 153 (1962); Poehlman v. Leydig, 194 Kan. 649, 400 P.2d 724 (1965); Stephens v. Winn-Dixie Stores, Inc., 201 S.2d 731 (Fla.1967). See generally, Sowell v. Travelers Insurance Co., 374 S.W.2d 412 (Tex.1963); Goodman v. Margolis, 8 A.D.2d 864, 187 N.Y.S.2d 145 (1959).

From the evidence presented to the Board it should have found either 50% or 100% disability, not compromised at 75%, depending upon which evidence the Board determined was the more credible or trustworthy. The majority opinion has settled on the 50%; but I feel respondent-cross-appellant is entitled to 100% particularly in view of the principle long followed in Idaho that:

"This court has repeatedly held that the Workmen's Compensation Law must be liberally construed with the view to effect its purpose and promote justice."

Manning v. Win Her Stables, 91 Idaho 549, 428 P.2d 55 (1967); Collins v. Moyle, 83 Idaho 151, 358 P.2d 1035 (1961). Additionally this court has stated that

"* * * all courts are agreed that there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical construction." Smith v. University of Idaho, 67 Idaho 22, 170 P.2d 404 (1946).

quoted in Kiger v. Idaho Corporation, 85 Idaho 424, 380 P.2d 208 (1963). Likewise, when the facts are about equally balanced in either of two ways, the one favoring the injured employee should be preferred. The petition should be returned to the Board with instructions to award 100% permanent disability.