751 P.2d 113

Ron L. REYNOLDS,
Claimant–Appellant,

v.

BROWNING FERRIS INDUSTRIES, Employer,

and

Transportation Insurance Co., Surety,
Defendants–Respondents.

No. 16711.

Supreme Court of Idaho.

Feb. 22, 1988.

Cantrill, Skinner, Sullivan & King, Boise, for claimant-appellant. Gardner W. Skinner, Jr., argued.

Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents. Michael G. McPeek, argued.

HUNTLEY, Justice.

Ron Reynolds, while working within the scope of his employment with Browning Ferris Industries, slipped beneath a moving garbage truck and was run over by the right rear wheels. Reynolds suffered, among other injuries, a dislocating hip fracture and a crushed left ankle.

The Industrial Commission entered its final Order on August 30, 1982, in which it awarded Reynolds permanent partial impairment of 5% as compared to the loss of the foot at the ankle and 30% as compared to the loss of the leg at the hip for injury to his right hip. The Commission also awarded Reynolds retraining benefits for a period not to exceed fifty-two weeks. The Commission further ordered that jurisdiction be retained "to determine the amount of the Claimant's permanent partial disability, if said disability exceeds his impairment rating."

Reynolds appealed the Commission's Order to the Supreme Court in order to protect his right to receive a higher rating should his condition deteriorate in the future. This Court dismissed the appeal as unnecessary, noting:

> ... the Commission ha[s] retained jurisdiction pending:
> (1) the completion of retraining and the subsequent final permanent disability rating and award, when the anticipated period of retraining extends beyond the five year period of limitations for the modification of ratings and awards, and
> (2) the setting of a final impairment rating in the case of a claimant whose medical condition is degenerative, when the worsening effects of the condition will probably manifest themselves over a period of time exceeding the five year period of limitations, and when the degeneration will cause the level of the claimant's impairment to change.

*Reynolds v. Browning Ferris Indus.*, 106 Idaho 894, 684 P.2d 296 (1984).

Following dismissal of the appeal, Browning Ferris requested a hearing to determine the extent of Reynolds' permanent partial disability. Also, Reynolds had filed with the Commission on July 22, 1983, an Application for Hearing pursuant to I.C. § 72–719, in order to obtain benefits as the result of a change of condition. Reynolds subsequently requested that a determination of his permanent disability rating be held in abeyance indefinitely, but the Commission denied his motion by its Order on September 6, 1985. The Commission held a hearing to decide all remaining issues, including the extent of Reynolds' permanent physical impairment and disability. In its Findings of Fact, Conclusions of Law, and Order, the Commission determined the following:

## FINDINGS OF FACT

. . . . .

### V

Based upon the evidence before it, the Commission finds that the Claimant continues to have permanent physical impairments of 5% as compared to the loss of a foot at the ankle and 30% as compared to the loss of a leg at the hip and that his impairments have not changed since the Commission's Award of 1982. The Commission further finds that it is likely that the Claimant will require a total hip replacement at some time in the future, though it will not occur as soon as had been anticipated in 1982. *It is possible that deterioration in the Claimant's right hip may result in a change in his permanent impairment and therefore a change in his permanent disability.*

CONCLUSIONS OF LAW

I

The Claimant has not experienced a change in the nature or extent of his permanent physical impairment since the 1982 Award. He continues to have a permanent physical impairment of 5% as compared to the loss of a foot at the ankle and 30% as compared to the loss of a leg at the hip. The Claimant is not entitled to a modification of the previous Award pursuant to § 72–719 Idaho Code.

II.

*Since the Claimant has declined to participate in the retraining program which he was awarded in 1982 and does not desire to do so, it is appropriate to determine the extent of the Claimant's permanent disability.* § 72–428(6) Idaho Code. Permanent disability results when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected. § 72–423 Idaho Code. Evaluation of permanent disability is an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent non-medical factors. § 72–425 Idaho Code. It is appropriate to consider a change in wage-earning capacity in determining permanent partial disability. *Baldner v. Bennett's, Inc.,* 103 Idaho 458 [649 P.2d 1214 (1982)]. The Commission notes that the Claimant is regularly employed in advertising sales and has suffered no decrease in his wage-earning capacity as a result of his injury. The Commission concludes that the Claimant has failed to establish that his permanent disability exceeds his permanent partial impairment rating. The Claimant is not entitled to an award for permanent disability exceeding the amount previously awarded for his permanent physical impairment.

III

The Commission deems it appropriate to *retain jurisdiction of this matter* in order to consider whether, in the future, the Claimant suffers a change in the nature or extent of his permanent disability in order that benefits may be awarded in the future should the Claimant experience an increase in his permanent disability. *Brooks v. Duncan,* 96 Idaho 579 [532 P.2d 921 (1975)]; *Reynolds v. Browning Ferris Industries,* 106 Idaho 894 [684 P.2d 296 (1984)].

ORDER

IT IS HEREBY ORDERED, and this does order, that the Claimant is not entitled to a modification of the 1982 Award pursuant to § 72–719 Idaho Code.

IT IS FURTHER ORDERED, and this does order, that the Claimant's permanent partial disability does not exceed the amount previously awarded him for permanent physical impairment.

IT IS FURTHER ORDERED that the Commission hereby *retains jurisdiction* of the above-entitled matter in order to award the Claimant additional benefits for permanent partial disability should the Claimant's condition change in the future as a result of deterioration of his right hip and anticipated surgical procedures. (Emphases added).

Browning Ferris petitioned the Commission for reconsideration of the portion of the Conclusions and Order providing for retention of jurisdiction. Following oral argument, the Commission withdrew its decision and substituted therefor Findings of Fact, Conclusions of Law and Order on Reconsideration identical to the original ones except that all references to the Industrial Commission retaining jurisdiction over this case were deleted.

Reynolds now appeals, claiming that the Commission erred in refusing to retain jurisdiction over his case in order to award additional benefits for increased permanent partial disability based upon probable future changes in his condition or, in the alternative, Reynolds claims that the Com-

mission should have based the present award upon an enhanced impairment and disability rating which reflects the medical probability of future increased impairment and disability.

The Commission determined that Reynolds was likely to require a total hip replacement at some time in the future, based upon the testimony of two orthopedic surgeons, Dr. Steven Rudd and Dr. Richard Gardner. Dr. Rudd had examined Mr. Reynolds on three occasions at the request of Browning Ferris' insurer, and Dr. Gardner had been Mr. Reynolds' treating physician since May, 1980. Both doctors agree that Reynolds had developed degenerative arthritis in his right hip and that the hip joint will continue to deteriorate to the point that Reynolds will require either a hip fusion or total hip replacement at some time in the future.

Dr. Rudd testified that future permanent physical impairment of Mr. Reynolds' hip could range from 50 to 100 percent; Dr. Gardner testified that future permanent physical impairment of Mr. Reynolds' hip could range from 50 to 75 percent. Neither physician could specify how many years it would be before Reynolds' hip would totally deteriorate, but their combined estimates ranged between five to twenty years down the road.

Despite the testimony of the physicians, the Commission still deemed that it was appropriate to "determine the extent of the Claimant's permanent disability," since Reynolds had "declined to participate in the retraining program which he was awarded in 1982...." The Commission's rationale was based upon its interpretation of I.C. § 72–428(6):

Delay in rating. *Following the period of recovery*, a permanently disabled employee who has been afforded vocational retraining under a rehabilitation program shall be rated for permanent impairment only until completion of the vocational retraining program at which time he shall be rated for permanent disability, deducting from any monetary award therefor amounts previously awarded for permanent impairment only. (Emphasis added).

Under I.C. § 72–428(6), a claimant shall be rated for permanent disability upon the completion of his vocational retraining program. However, not all claimants participate in retraining programs and, even for those who do, emphasis must be given to the words "Following the period of recovery."

In order to ascertain when the period of recovery is completed, it is necessary to go no further than the various worker's compensation statutes. The recovery period draws to a close and a permanency rating shall be assessed when the condition is no longer progressive:

72–422. **Permanent impairment.**— "Permanent impairment" is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, *is considered stable or non-progressive at the time of evaluation.* Permanent impairment is a basic consideration in the evaluation of permanent disability, and is a contributing factor to, but not necessarily an indication of, the entire extent of permanent disability. (Emphasis added).

72–423. **Permanent disability.**—"Permanent disability" or "under a permanent disability" results when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and *no fundamental or marked change in the future can be reasonably expected.* (Emphasis added).

■ The key language in the above statutes focuses on the fact that neither physical impairment nor disability is *permanent* until the point when no further deterioration or change can be expected. Both physicians testified that Reynolds' condition was progressive. And since permanent impairment is a "basic consideration in the evaluation of permanent disability," I.C. § 72–422, then the Commission erroneously relinquished jurisdiction over the future determination of Reynolds' permanent disability. If it is apparent that Reynolds' physi-

cal impairment is progressive, then it follows that the Commission cannot assess Reynolds' permanent partial disability based solely upon his present level of impairment. Future progression in Reynolds' physical impairment *may* play an important role in the evaluation of his future permanent partial disability and, thus, cannot be ignored.

■ In a situation where the claimant's impairment is progressive and, therefore, cannot adequately be determined for purposes of establishing a permanent disability rating, it is entirely appropriate for the Industrial Commission to retain jurisdiction until such time as the claimant's condition is nonprogressive. *Horton v. Garrett Freightlines, Inc.,* 106 Idaho 895, 684 P.2d 297 (1984); see also, *Brooks v. Duncan,* 96 Idaho 579, 532 P.2d 921 (1975).

Browning Ferris argues that the Industrial Commission may retain jurisdiction only so long as it has made only temporary allowances and that there is no modifiable final award, based upon this Court's decision in *Brooks, supra.*[1] In *Brooks* we held:

> [W]e feel that not only are I.C. §§ 72–407 and 72–607 [now I.C. §§ 72–706 and 72–719] inapplicable to the circumstances of this case, but that they do not set any public policy limiting the amount of time within which the Industrial Commission can retain jurisdiction after making a temporary allowance in order to make a final permanent award to an injured employee.

■ Although subsequently superseded by its second decision, the Commission's initial decision specifically retained jurisdiction should Reynolds suffer a "change in the nature or extent of his permanent disability in order that benefits may be awarded in the future...." The Commission was obviously well apprised of the progressive nature of Reynolds' impairment when it retained jurisdiction. In fact, the Com-

mission even relied upon *Brooks* and *Reynolds* as its bases for retaining jurisdiction. The very fact that the Commission had retained jurisdiction in its initial decision reveals that its determination was not intended to be final, particularly when coupled with the fact that it also stated that Reynolds' condition was progressive. In fact, whenever the Commission explicitly retains jurisdiction over a matter, that act by its very nature infers that there is neither a final determination of the case nor a final permanent award to the employee.

The Commission's error lies in the fact that it attempted to assess Reynolds' permanent partial disability based *solely* upon his present level of disability although it was fully aware that his condition was progressive.

Although it was entirely appropriate for the Commission to retain jurisdiction of Reynolds' case, there is also another possible approach the Commission may appropriately utilize in order to determine his permanent partial disability rating. The authority for this alternative approach is found in I.C. § 72–425:

> **Permanent disability evaluation.—** "Evaluation (rating) of permanent disability" is an appraisal of the injured employee's *present and probable future ability to engage in gainful activity* as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors provided in section 72–430, Idaho Code. (Emphasis added).

■ Under I.C. § 72–425, the Commission can presently make an award for permanent disability based upon the injured employee's "present and probable future ability to engage in gainful activity." The Commission may thus estimate a claimant's probable future disability and reduce it to present value for the purpose of making a final award which takes into account probable future changes in impairment. Thus, when the Commission estimates what the

---

1. Counsel for respondents, at oral argument, conceded that regardless of the outcome of the appeal, Reynolds remains entitled to medical services, appliances, and supplies pursuant to I.C. § 72–432, for which benefits there is no applicable statute of limitations. *See, Rohnert v. Amalgamated Sugar Co.,* 95 Idaho 763, 519 P.2d 432 (1974), and *Steinebach v. Hoff Lumber Co.,* 98 Idaho 428, 566 P.2d 377 (1977).

claimant's future disability might be, it will in a sense be functioning much like any jury or trier-of-fact in a personal injury action.

Reversed and remanded for further proceedings consistent herewith, including the taking of testimony if necessary. Costs to appellant, no attorney fees awarded.

SHEPARD, C.J., BAKES and BISTLINE, JJ., and McFADDEN, J.· Pro Tem., concur.

BAKES, Justice, concurring specially:

I agree that the commission's order must be reversed and the matter remanded to the commission for further proceedings.

When the commission first evaluated the claimant, it made its permanent physical impairment evaluation and ordered a retraining program for the claimant. When claimant declined to participate in the retraining program, the commission correctly proceeded to rate the claimant for a permanent disability. In reviewing the commission's findings of fact, it appears that the permanent disability rating was based upon the claimant's *present* ability to engage in gainful activity without consideration of the claimant's probable *future* ability to engage in gainful activity. That conclusion was appropriate as long as the commission retained jurisdiction as it initially did in its final order. However, when on rehearing it changed the order, removing the retained jurisdiction provision, then it was incumbent upon the commission at that time to make a permanent disability award to the claimant representing both his "present and [his] *probable future ability* to engage in gainful activity." I.C. § 72–425. I agree with the majority that the record does not disclose that the commission did that in this case, and therefore the commission's order must be reversed and the matter remanded for further consideration.

As the Court's opinion points out, the commission can do one of two things. It can either retain jurisdiction, as its final order originally provided, or, if it does not, then it should make a permanent disability award which includes an evaluation both of

the "present" and the "probable future ability" to engage in gainful activity.

Whether the commission ultimately decides to retain jurisdiction will depend a great deal upon its evaluation of the medical evidence regarding the claimant's rehabilitation. Several statutes need to be considered, as pages 6 and 7 of the Court's opinion point out. I.C. § 72–428(6) uses the phrase "following the period of recovery...." I.C. § 72–422 uses the language "'permanent impairment' is any anatomic or functional abnormality or loss *after maximal medical rehabilitation has been achieved* and which abnormality or loss, medically, *is considered stable or nonprogressive at the time of evaluation*." I.C. § 72–423 uses the phrase "and no fundamental or marked change in the future can be reasonably expected."

It is to be expected that many permanent disabilities will become more serious with age. Even if a medical condition does not deteriorate, a disability which one may be able to overcome in his prime years may, with age and loss of overall body strength, become a more disabling physical condition. With some medical conditions, even though maximum medical rehabilitation has been achieved, future medical deterioration can reasonably be expected. This appears to be just such a case. The evidence demonstrates that sometime in the future degenerative arthritis caused by the accident and injury will probably require surgery. In such cases, the commission must decide if a claimant has reached "maximal medical rehabilitation" and is "considered stable or nonprogressive" in order to make a permanent impairment evaluation. I.C. §§ 72–422, –424. In arriving at the permanent disability evaluation, the commission must consider whether any "fundamental or marked change in the future can be reasonably expected." I.C. §§ 72–423, –425. If a "fundamental or marked change in the future can be reasonably expected," the commission should not make a permanent disability rating without retaining jurisdiction. If the commission does make a final permanent disability rating without retaining jurisdiction, that permanent disability rating must include an evaluation of both the

present and the *probable* future ability of the claimant to engage in gainful activity.

Our prior cases have indicated a preference for making final determinations of permanent disability, rather than retaining jurisdiction. *McCall v. Potlatch Forests*, 67 Idaho 415, 182 P.2d 156 (1947). However, any final determination of disability must include both a "present" and the "probable future ability to engage in gainful activity."

I concur in the majority's reversal and remand of this matter to the commission for further proceedings.

BISTLINE, Justice, specially concurring:

Having readily concurred with the well-reasoned opinion authored by Justice Huntley, my only concern has been occasioned by the special concurring opinion of Justice Bakes, which, no matter how many times I read it, demonstrates that he is in agreement everything with which Justice Huntley has written. For certain, he voices no disagreement whatever with what Justice Huntley has written.

On one final reading, however, I came across one sentence in Justice Bakes' special concurrence which made me ponder, and then engage in a little research. I refer to the top of page 971, 751 P.2d page 119 where he writes: "Our prior cases have indicated a preference for making final determination of permanent disability, rather than retaining jurisdiction. *McCall v. Potlatch Forests*, 67 Idaho 415, 182 P.2d 156 (1947)." It appears to be a rather innocuous statement, but it is *the one thing* which Justice Bakes has written which Justice Huntley did not intimate or even mention. *McCall v. Potlatch Forests* has passed its fortieth birthday, and, as could be expected, might not now stand for as much as it did in 1947.

In the year 1971, the legislature enacted a sweeping revision of the Workman's Compensation Law. Chapter 124, 1971 Idaho Sess. Laws 422. (A caveat to be mentioned now and kept in mind is that some of those old and earlier Idaho cases in the realm of Workman's Compensation Law

must be reviewed in light of any later case precedent, and also in light of the changes of the statutory law.) The 1947 *McCall* case seems to be a case that should not just be casually cited without an investigation and analysis of its present day application, if any, to a 1987 review of the compensation claim of Mr. Reynolds.

Over the protest of Mr. Reynolds, the Commission, on petition of Browning Ferris and its surety, retreated from its earlier decision to retain jurisdiction, *which claimant had requested* as being in his best interests. As Justice Huntley points out, Reynolds' appeal raises the contention that the Commission erred in doing so. The *McCall* case, which Justice Bakes apparently believes should be of some control and guidance to the Commission in further proceedings was in just the opposite position as this case. Mr. McCall, a Potlatch employee, was the appellant. The main thrust of McCall's appeal was that he was eligible for an award in keeping with his changed physical condition under then I.C. A. 43–1407. He had originally been injured in July of 1941, and in December of that year entered into an agreement for compensation wherein his permanent partial disability was fixed and determined to be the equivalent of 15 percent compared to an amputation of a leg at the hip. His July 1945 application based on change of condition was timely, and the Commission (then the Board), found there was a change in his condition and that he was entitled to a modification of the compensation agreement. It was also specifically found that his physical impairment was greater than at the time that agreement had been entered into.

But, on the basis that permanent impairment was not yet definite, fixed, or permanently determinable, the Board declared that he was not entitled (then) presently to an order fixing or determining the amount of permanent physical impairment. The Board ruled as a matter of law that it could and would retain jurisdiction until such time as his injury, "becomes fixed and definite and the amount, if any, of his physical impairment over and above the 15 percent

loss by amputation of the leg at the hip can be permanently fixed and determined," and on that basis the second proceeding in McCall's case was brought to a conclusion; he appealed on the basis of his desire for an immediate award.

The Supreme Court, unanimously, after first observing that, "An examination of the record does disclose that no witness, expert or lay, said or attempted to estimate how long it would be before claimant's disability would become fixed," added, "That time might come early or late, and *might never come during claimant's lifetime.*" The Court concluded accordingly: "The Board's motive in delaying is praiseworthy. However, its action withholds from claimant relief to which he is now entitled and presents a situation which brings to mind the statement 'Justice delayed is justice denied.'" 67 Idaho at 420, 182 P.2d 156. Accordingly, the continuance was reversed and the case was remanded to the Board with instructions to determine his permanent disability and to make an award.

It is, perhaps, easy to overlook the fact that the law which was applicable at the time of McCall's journey through the Board and into the Supreme Court, did not seem to recognize any distinction between impairment and disability. But one should be more careful. In 1947, there were no statutes in the Workman's Compensation Law worded anything like I.C. §§ 72–422, 72–423, 72–424, and 72–425. Accordingly, in 1947, the Board, and in turn the Court, had no reason to concern itself with a determination of whether *fundamental or marked change in the future can be reasonably expected.* All four of those sections of the present worker's compensation law evolved as a result of the sweeping 1971 recodification amendments.

Using the plural, rather than the singular, Justice Bakes has nevertheless written that, "Our prior cases have indicated a preference for making final determinations of permanent disability, rather than retaining jurisdiction." That statement simply will not stand the light of day, meaning 1988 light of day. Nor was there anything in the opinion of the Court in the *McCall*

case which expressed any such sentiment or philosophy on the part of the Supreme Court. The case stands for but one proposition: That in the year 1947 under the then status of the Workman's Compensation Law, an injured worker who so desired was entitled to a final determination of his permanent disability, and that converted into a monetary award.

As a precaution, that case has been Shepardized to ascertain if any case out of this Court has since cited it for the proposition advanced by Justice Bakes in his separate opinion. No such case has been found. *McCall* has been cited in a number of instances, mostly for the proposition that the workman's compensation act is to be liberally construed, as stated in *McCall*, and for the proposition that the Board's order of continuance, postponing McCall's award until his condition was fixed, definite, and determinable, was appealable as a final order.

A worthwhile by-product brought about by Justice Bakes use of the *McCall* case in his special concurrence was that the task of Shepardizing it lead to the case of *Griffin v. Potlatch Forests, Inc.*, 93 Idaho 174, 457 P.2d 413 (1969).

Here, too, is another case predating the 1971 revision, and which for that reason most likely has no precedential value. For reasons which may surface in some other opinion or at some other time, I have strong misgivings as to its validity when written, and see the dissent of Justice Spear being more in accord with the law and policy of the Workman's Compensation Law as of that date.

The earlier caveat in this opinion is probably worth repeating and perhaps expanding. When one reviews the Workmen's Compensation Law, observes the sweeping 1971 revisions, and many other amendments since made from time to time, the inevitable conclusion is drawn that some of the many compensation cases which are in the Idaho Reporter system actually have no remaining efficacy whatever, but because the statutory law has changed there has been no occasion to overrule or disavow them.

Perhaps a dedicated group of attorneys who are knowledgable in that field could go through all of the reported cases and report to the Court which should be overruled by judicial determination based upon the recommendation given, or go to the legislature and do so, in order that they do not any longer encumber or muddy the law. *McCall* and *Griffin* are two cases that should be overruled one way or the other. I would vote today that neither has any precedential value under now existing case law or statutory law, but others more versed in this field of law should be heard from.

As for the case now at hand, and the tendered guidance on remand per the opinion for the Court and per the separate opinion of Justice Bakes, I add my own thought which is that the wishes of claimant should be of paramount consideration when the Commission determines the period of retained jurisdiction. Claimant will have the able advice of his attending physicians and his attorney in making that decision. While it is true that a jury often has to forecast as best it can for future surgery, expense thereof, and results obtained therefrom, that is because a district court cannot retain jurisdiction in order to ascertain five to ten or more years later what an injured person's condition will be.

For what it may be worth, and because none of us can be very comfortable in the use of medical terminology, I suggest that the Commission with its own and available expertise will be more precise than Justice Bakes where he writes of "expected medical deterioration" and "future degenerative arthritis." Those words may be found to be not wholly synonymous.

Not knowing, I have examined a medical thesaurus. An injured joint appears to be subject to both chemical change in tissue and an abnormal infiltration of abnormal matter—cartilage out and calcium build-up in. Apparently it can spread throughout the body.

All things considered, there is no reason why claimant, this badly injured young claimant, should not be to some extent the master of his own destiny.

Because the defendants' have prodded the Commission into the error committed, there is no reason why claimant should not have his costs and attorney fees both in this Court and in Commission proceedings which led to the improvident change in the order discarding jurisdiction.

HUNTLEY, J., concurs in all except the final paragraph.